**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BLAKE E.,

                Claimant,

        v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

                Respondent.

No. 24 C 243

Magistrate Jeffrey T. Gilbert

**MEMORANDUM OPINION AND ORDER**

Blake E.[1] ("Claimant") appeals the decision of the Commissioner of Social Security[2] ("Commissioner"), denying his application for disability insurance benefits. For the reasons set forth in this Memorandum Opinion and Order, the Court affirms the Commissioner's decision.[3]

**Background**

Claimant filed an application for disability insurance benefits on February 5, 2020, alleging a disability onset date of August 31, 2017. (R.15). His application was denied initially and on reconsideration after which Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*) The ALJ held a hearing on August

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

[3] The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 6].

1

10, 2023 and issued his decision on August 23, 2023, denying Claimant's application for benefits and finding he was not disabled under the Social Security Act from August 31, 2017, until December 31, 2020, which is his date last insured. (R.15-23) The Appeals Council denied Claimant's request for review (R.1-6), leaving the ALJ's decision as the final decision of the Commissioner, which is reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If it is determined that the claimant is not disabled at one step of the evaluation process, the ALJ need not continue to the next step.

2

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity during the period from his alleged onset date of August 31, 2017, though his date last insured on December 31, 2020. (R.17). At step two, the ALJ determined that Claimant had the medically determinable impairments of unilateral hearing loss, sleep apnea, right temporomandibular joint dysfunction, and post-traumatic stress disorder ("PTSD"). (R.17). The ALJ then found that, through his date last insured, Claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months and, therefore, did not have a severe impairment or combination of impairments. Because the ALJ found at step two that Claimant did not have any severe medically determinable impairment or combination of impairments, the ALJ concluded that Claimant was not disabled and did not proceed to the third step in the analysis. (R.16-18).

### Standard of Review

The district court reviews the ALJ's decision deferentially and must affirm the decision if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Seventh Circuit has concluded that an ALJ's decision is "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th

3

1050, 1053 (7th Cir. 2024). Though the standard of review is deferential, the court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even if there is adequate evidence in the record to support an ALJ's decision, that decision cannot be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *see also Warnell*, 97 F.4th at 1053.

## Analysis

Claimant argues he has severe physical and mental impairments that have prevented him from working since August 31, 2017. He asserts two arguments as the basis for his request to remand this case: (1) the ALJ's finding at step two that Claimant did not have any severe impairment or combination of impairments is not supported by substantial evidence; and (2) the ALJ erred in evaluating the opinion evidence from Claimant's treating sources and not considering his disability rating from the Department of Veterans Affairs. For the reasons discussed below, the Court is not persuaded by Claimant's arguments.

As part of the five-step evaluation, the ALJ reviewed Claimant's medical records and identified four medically determinable impairments, including unilateral hearing loss, sleep apnea, right temporomandibular joint dysfunction, and PTSD, and provided specific reasons why he did not find any of these impairments or a combination of these impairment to be severe. Although Claimant essentially only

4

challenges the ALJ's assessment of his PTSD, the Court will address all of the impairments the ALJ discussed.

As to Claimant's temporomandibular joint dysfunction, the ALJ explained:

The record indicates that the claimant was diagnosed with temporomandibular joint dysfunction after he reported symptoms on one occasion in 2013, four years prior to his alleged onset date (Ex. 14F/8-9). The record indicates that the claimant continued to work at substantial gainful activity levels through 2014 and there is no indication in the medical evidence that he sought or received any additional treatment for issues related to his jaw from his alleged onset date through his date last insured (Ex. 19F). Therefore, I find the claimant's temporomandibular joint dysfunction did not cause more than minimal functional limitations for twelve consecutive months and is considered a nonsevere impairment for purposes of this decision.

(R.19). As to Claimant's hearing loss, the ALJ explained:

The record also indicates that the claimant was diagnosed with unilateral hearing loss several years prior to his alleged onset date (Ex. 10F/13; 14F/19, 22; 16F/19). However, the record indicates that the claimant continued to work at substantial gainful activity levels through 2014 and the audiologist who conducted the original testing while he was in the Air Force did not indicate that the claimant's hearing loss resulted in any limitations (Ex. 10F/13; 14F/19, 22; 16F/19). Lastly, there is no indication that the claimant sought or received any treatment for reports of hearing issues from his alleged onset date, August 31, 2017, through his date last insured, December 31, 2020, in the medical record (Ex. 19F). Therefore, I find the claimant's unilateral hearing loss did not cause more than minimal functional limitations through his date last insured and is considered a nonsevere impairment for purposes of this decision.

(R.19). As to Claimant's sleep apnea, the ALJ concluded:

The record also indicates that the claimant was diagnosed with sleep apnea several years prior to his alleged onset date (Ex. 16F/28-30). However, there is no indication that the claimant sought or received any treatment for sleep apnea from his alleged onset date through his date last insured and in January 2018, the treatment notes indicate that the claimant used a CPAP for his sleep apnea (Ex. 19F/52). There is no indication in the medical evidence that the claimant's sleep apnea caused more than minimal limitations in his ability to perform basic work-related activities from his alleged onset date through his date last

5

insured (Ex. 19F). Therefore, I find the claimant's sleep apnea is considered a nonsevere impairment for purposes of this decision.

(R.19).

As quoted above, the ALJ's opinion demonstrates that he reasonably assessed Claimant's unilateral hearing loss, sleep apnea, and right temporomandibular joint dysfunction impairments and provided more than adequate reasons and a sufficient explanation to support his conclusion that they are not severe impairments. The Court cannot reweigh the evidence and is limited to considering whether substantial evidence supported the ALJ's conclusions. It important to remeber what this means—"[s]ubstantial evidence includes 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). And when making this determination, the Court must review the record as a whole and cannot substitute its judgment for that of the ALJ's. *Id.* On this record, the Court concludes the ALJ provided a more than adequate explanation for his conclusions. Specrcailly, there is substantial evidence supporting his findings that Claimant's unilateral hearing loss, sleep apnea, and right temporomandibular joint dysfunction are not severe impairments, and Claimant does not point to any contrary evidence. Therefore, remand is not warranted on this basis.

Turning to Claimant's PTSD, which is the focus of Claimant's argument, the ALJ concluded:

> I find the claimant's PTSD did not cause more than mild limitations in the claimant's functioning through his date last insured and is a nonsevere impairment for purposes of this decision.

6

(R.19-20). After making this statement, the ALJ proceeded to explain in his opinion that he reviewed Claimant's medical records and noted that he received care psychotherapy through the Department of Veterans Affairs in 2017 and early 2018. (R.20). The ALJ, however, also noted at the time that Claimant reported he had been helping his ex-girlfriend build her business, was exercising regularly, and was feeling "a little better with people around him." (R.20). When Claimant was discharged from the Department of Veterans Affairs PTSD clinic on April 17, 2018, the ALJ noted that his exam showed "he was meticulously groomed and dressed, pleasant and engaged" and was given instructions to follow up if needed. (R.20). The ALJ additionally noted that after April 2018 there is nothing in the record evidence to indicate that Claimant sought or received any further medical treatment or therapy until November 2022, almost two years after his date last insured. (R.20).

Claimant argues that the ALJ focused too much on the gap in treatment and that the lack of medical treatment between April 2018 and November 2022 does not mean that his mental impairments were not severe. That may or may not be true. The problem, however, is that there are no medical records to support what Claimant says, and the Court cannot and will not speculate. In addition, Claimant testified that his therapy sessions ended because he reached a point where he thought that he had accomplished everything, and he rejected his therapist's recommendation to

participate in an inpatient program and instead chose to travel to Malta to visit friends.[4] (R.66).

The Court evaluates the ALJ's decision based on the record and not speculation. It is Claimant's burden to show that he had severe impairments prior to his date last insured, but Claimant does not point to any evidence during the relevant period at issue (from August 31, 2017 until December 31, 2020) that would support a finding that the ALJ erred or that his PTSD imposed severe functional loss. *See Nanci R. v. Kijakazi*, 2023 WL 9227001, at *3 (N.D. Ill. Dec. 14, 2023) ("Of the scant medical evidence from the relevant time period, none of the medical evidence Plaintiff discusses compelled a finding that she had work-related functional limitations."). On this record, the Court finds that Claimant has failed to satisfy his burden, and the Court concludes that the ALJ reasonably assessed Claimant's PTSD and provided sufficient reasons, consistent with the law, supporting his conclusion that Claimant's PTSD was not a severe impairment prior to his date last insured.

Because Claimant reported limitations in his mental functioning, the ALJ also evaluated the four broad functional areas of mental functioning known as the

---

[4] Claimant suggests that the ALJ erroneously concluded that Claimant was in Malta from 2018 until 2022 after he was discharged from the VA clinic. Claimant's Motion [ECF 13], at 6. The Court disagrees. The ALJ specifically noted in his opinion: "The claimant also testified that he spent two months visiting friends in Malta in 2018, traveled there alone and spent his time there at the beach and working out." (R.19). Claimant cites another statement in the opinion to argue the contrary: "In addition, while the claimant testified that his impairments left him unable to function in public, there is no indication that he sought or received any treatment after he moved to Malta to be with friends in 2018 until November 2022." (R.22). Claimant reads this statement to mean that the ALJ thought Claimant lived in Malta from 2018 until November 2022. The Court disagrees and read this statement differently. Based on the ALJ's earlier statement in his opinion, it is clear to the Court the ALJ understood that Claimant was in Malta for two months in in 2018 and the ALJ's later statement should be read to mean that Claimant did not seek treatment from 2018 until November 2022.

"paragraph B" criteria and determined that Claimant had mild limitations in (1) interacting with others and no limitaitons in the remaining areas, including (2) understanding, remembering or applying information, (3) concentrating, persisting or maintaining pace, and (4) adapting and managing himself. (R.21-23). Ultimately, the ALJ explained:

> I have considered the testimony and written statements provided by the claimant for the period through his date last insured, December 31, 2020. I find the claimant's statements regarding the severity of his alleged limitations are not consistent with the evidence through his date last insured. During his hearing, the claimant testified that his mental impairment left him unable to have conversations with others without having a panic attack, he became aggressive around others and he had intrusive thoughts and nightmares. The medical record indicates that the claimant received treatment for mental health issues from 2000 to 2014. However, the record also indicates that he was able to work despite his mental health issues and that after 2014, there is no indication that he sought or received any treatment until late 2017 (Ex. 19F). In addition, while the exams from late 2017 and early 2018 do indicate that the claimant reported he was uncomfortable in public, there is no indication that he was treated for panic attacks and none of his treatment providers noted that he was unable to have conversations with them despite his testimony (Ex. 19F/17, 18, 20, 22, 31, 33, 35, 54). In addition, while the claimant testified that his impairments left him unable to function in public, there is no indication that he sought or received any treatment after he moved to Malta to be with friends in 2018 until November 2022 (Ex. 19F/16; 23F/183-189). Notably, while the claimant testified that his impairments left him unable to perform any type of work activity, his exam in November 2022 showed no physical or mental status abnormalities (Ex. 23F/187). I find the claimant's statements do not support the conclusion that the claimant's impairments caused more than minimal functional limitations through his date last insured. *Id.*

(R.21).

As quoted above, the ALJ's opinion again shows that he evaluated Claimant's medical records and treatment history and identified minimal mild limitations but reasonably found that the record evidence did not support a finding that any of

Claimant's limitations, impairments, or combination of the impairment were severe. Claimant essentially is asking the Court to weigh the evidence differently than the ALJ did, but that is something the Court cannot do. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it."). In the Court's view, the ALJ provided more than sufficient reasons to support his conclusions in this case. *See Patrick C. v. Saul*, 2020 WL 6287370, at *6 (N.D. Ill. Oct. 27, 2020) ("It must be remembered that all the ALJ has to do is minimally articulate his or her reasons for rejecting a medical opinion…The ALJ doesn't have to delve into each factor that goes into the assessment of medical opinion, chapter and verse.").

Ultimately, the relevant question for this Court is not whether the ALJ's assessment is correct but whether it is reasonable and supported by the record. *See Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("An ALJ's job is to weigh conflicting evidence, and the loser in such a process is bound to believe that the finder of fact should have been more favorable to his cause."). Here, Claimant fails to meet his burden of demonstrating that the ALJ's analysis is not supported by substantial evidence. To the contrary, the Court finds, based on this record, there is more than enough evidence supporting the ALJ's step two finding that Claimant did not have any severe impairments or combination of impairments prior to his date last insured, and the ALJ provided the requisite logical bridge between the record evidence and his conclusion. Therefore, the ALJ's finding at step two must be affirmed.

10

Next, Claimant argues that the ALJ erred in evaluating the opinion evidence from Claimant's treating sources and not considering his disability rating from the Department of Veterans Affairs. Again, the Court is not persuaded by Claimant's argument. The regulations require an ALJ to consider a number of factors when evaluating medical opinions, the most important of which are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2), (c). The regulations additionally require ALJs to explain how they evaluated the medical opinions and whether or not the opinions are persuasive and why. *See* 20 C.F.R. § 404.1520c(a) and (b)(1). The ALJ need only "minimally articulate [her] reasons for crediting or rejecting" each opinion. *Clifford v. Apfel*, 227 F.3d 836, 870 (7th Cir. 2000).

Here, the ALJ found that the opinions of Claimant's treating sources were not persuasive and provided the following explanation:

> I have considered the opinions provided by Dr. Katie Burkuri and Nurse Practitioner Basta for the period through December 31. 2020 (Ex. 20F; 22F). I find their opinions are not persuasive as they are not well supported and inconsistent with the medical evidence addressing the period prior to the claimant's date last insured. Dr. Burkuri and Nurse Practitioner Basta issued their opinions in 2022 and 2023, well after the period relevant to this decision, August 31, 2017, through December 31, 2020 (Ex. 20F; 22F). In addition, there is no indication in the medical evidence that Dr. Burkuri or Nurse Practitioner Basta examined the claimant at any time from his alleged onset date through his date last insured, December 31, 2020 (Ex. 19F). Their opinions are also not consistent with the medical evidence prior to the claimant's date last insured. While Dr. Burkuri and Nurse Practitioner Basta reported that the claimant had debilitating mental and physical limitations in their opinions, the exams in the record from 2017 and 2018 showed the claimant had no physical abnormalities and his mental status exams consistently showed he was alert, well groomed, had logical thought process was logical and had no memory or attention deficits (Ex. 19F/17, 18, 20, 22, 31, 33, 35, 54). In addition, while Dr. Burkuri and Nurse Practitioner Basta noted the claimant had debilitating physical and

11

mental limitations, there is no indication in the medical evidence that the claimant sought or received any medical treatment after April 2018 until November 2022, nearly two years after his date last insured (Ex. 19F/16; 23F). Therefore, I find Dr. Burkuri's and Nurse Practitioner Basta's opinions are not persuasive as they are not well supported and inconsistent with the medical evidence prior to the claimant's date last insured.

(R.20-21). In his opinion, the ALJ specifically stated that he was not persuaded by Dr. Burkuri's and Nurse Practitioner Basta's opinions because they are not supported by or consistent with the record evidence. (R.20-21). The ALJ further explained these opinions were issued years after Claimant's date last insured and that there is no evidence in the record that either provider was familiar with Claimant during the relevant period. (R.20-21). The ALJ also noted that their opinions, which found that Claimant had debilitating limitations, were inconsistent with the normal examination findings made during the relevant period, and there is nothing in the record that indicate Claimant sought any treatment between April 2018 and November 2022. (R.21).

As an initial matter, the Court notes that Claimant does not squarely address the ALJ's reasons for discounting by Dr. Burkuri's and Nurse Practitioner Basta's opinions and essentially asks the Court to weigh the opinion evidence differently than the ALJ did. However, that is something the Court cannot do. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.").

In addition, the Seventh Circuit has recognized that the worsening of a claimant's condition after the date last insured does not provide a basis for granting

12

benefits during the relevant time period." *Vincent A. v. Berryhill*, 2019 WL 2085104, at \*8 (N.D. Ill. May 13, 2019). The Court finds that the ALJ reasonably assessed the supportability and consistency of Dr. Burkuri's and Nurse Practitioner Basta's opinions consistent with the regulations and provided more than sufficient reasons to find them not persuasive. The Court, therefore, cannot and will not disturb the ALJ's assessment, and remand is not warranted on this basis.

Finally, as to Claimant's disability rating from the Department of Veterans Affairs, the regulations explicitly state that decisions by other government agencies are inherently neither valuable nor persuasive and that ALJs "will not provide any analysis about how [they] considered such evidence." 20 C.F.R. § 404.1520b(c)(1). The authority upon which Claimant relies, 20 C.F.R. § 404.1504, similarly states that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency … about whether you are disabled, blind, employable, or entitled to any benefits." The regulations do permit consideration of "the supporting evidence underlying the other" agency's decision. *Id*. Here, the ALJ did consider Claimant's medical records from the Department of Veterans Affairs, but he evaluated and weighed them differently than Claimant would like. As discussed above, this Court cannot reweigh the evidence or substitute its judgment for the ALJ's so long it is supported by substantial evidence. For all these reasons, the Court finds that the ALJ's decision is supported by substanial evidence, and it should be affirmed.

13

**Conclusion**

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 13] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 16] is granted. The Commissioner's decision is affirmed, and this case is closed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 27, 2026

14